# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ARTHUR BENNING, JR., Individually and On Behalf Of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>TEMPUR-PEDIC INTERNATIONAL, INC., )<br>MARK A. SARVARY and DALE E. WILLIAMS, )<br><br>Defendants. )<br><br>_____ ) | CASE NO. 5:12-CV-197-KKC<br><br><br>Eastern District of Kentucky<br>**F I L E D**<br><br>**JUN 25 2012**<br><br>AT LEXINGTON<br>ROBERT R. CARR<br>CLERK U.S. DISTRICT COURT |

## CLASS ACTION COMPLAINT

Plaintiff Arthur Benning, Jr. ("Plaintiff") alleges upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by Tempur-Pedic International, Inc. ("Tempur-Pedic" or the "Company") and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, and postings on Tempur-Pedic's website concerning the Company's public statements; and (d) review of other publicly available information concerning Tempur-Pedic and the Individual Defendants.

## I.     NATURE OF THE ACTION

1.     This is a federal securities class action against Tempur-Pedic and certain of its officers and/or directors for violations of the federal securities laws. Plaintiff brings this action on behalf of all persons or entities that purchased Tempur-Pedic securities between January 25, 2012 and June 5, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the

Securities Exchange Act of 1934 (the "Exchange Act"). The Exchange Act claims allege that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price. As a result of the fraud described below, the Company has lost a substantial portion of its value.

2.     Tempur-Pedic engages in the manufacture, marketing, and distribution of bedding products in North America and internationally. The Company was founded in 1989 and is headquartered in Lexington, Kentucky.

3.     Plaintiff alleges that, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business and operations. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that the Company's profit and revenue forecasts issued in January 2012 were lacking in any reasonable basis; (ii) that, at the time the Company issued its profit and revenue forecast in January 2012, the Company's insiders knew that the competitive landscape in its industry was more difficult than described and would thus make the Company's guidance impossible to achieve; (iii) that certain insiders of the Company capitalized on this material adverse information to sell the Company's shares at inflated prices before the truth concerning Tempur-Pedic's sales information was disclosed to the market; (iv) that the Company lacked adequate internal and financial controls; and (v) that, as a result of the above, the Company's statements concerning its business and operational prospects were materially false and misleading at all relevant times.

4.     On June 6, 2012, the Company issued a press release in which it announced that it was cutting its full-year profit and revenue forecasts amid lower-than-expected second quarter sales in North America. For the period ending June 30, 2012, sales were expected to be 3% to 5% less than the same period a year earlier. Full-year earnings were expected to be approximately $2.70 per share, down from a previous forecast of as much as $3.95 per share. Analysts projected approximately $3.93 per share, the average of 14 estimates compiled by

Bloomberg. Sales for 2012 were expected total about $1.43 billion, compared with a prior projection of a maximum of $1.65 billion.

5.      Tempur-Pedic's announcements caused the Company's stock price to plummet $21.28 from its prior trading day close of $43.67 to close on June 6, 2012 at $22.39—a massive one-day decline of over 48% on unusually heavy trading volume.

6.      Defendants' wrongful acts and false and misleading statements and omissions have caused a precipitous decline in the market value of the Company's stock. Plaintiff and other Class members have suffered significant losses and damages.

## II.      JURISDICTION AND VENUE

7.      This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b 5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1307, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act. Tempur-Pedic maintains its corporate headquarters in this District, and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

10.      In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.      PARTIES

### A.      Plaintiff

11.      Plaintiff purchased the publicly traded Tempur-Pedic securities at artificially inflated prices during the Class Period and has been damaged thereby.

12.     Plaintiff is a resident of Montgomery County, Pennsylvania.

**B.**     **Defendants**

      **i.**     **The Company**

13.     Defendant Tempur-Pedic is a Delaware corporation with principal executive offices located at 1713 Jaggie Fox Way, Fayette County, Lexington, KY 40511.

      **ii.**     **The Individual Defendants**

14.     Defendant Mark A. Sarvary ("Sarvary") was, at all relevant times, the Chief Executive Officer and President of Tempur-Pedic and a member of the Company's Board of Directors. Sarvary has been with Tempur-Pedic since August 2008. Sarvary's principal executive office is located at 1713 Jaggie Fox Way, Fayette County, Lexington, KY 40511.

15.     Defendant Dale E. Williams ("Williams") was, at all relevant times, the Chief Financial Officer and Executive Vice President of Tempur-Pedic. Williams has been with Tempur-Pedic since July 2003. Williams' principal executive office is located at 1713 Jaggie Fox Way, Fayette County, Lexington, KY 40511.

16.     Defendants Sarvary and Williams are collectively referred to herein as the "Individual Defendants."

17.     Tempur-Pedic and the Individual Defendants are referred to herein as "Defendants."

18.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Tempur-Pedic, were privy to confidential, proprietary and material adverse non-public information concerning Tempur-Pedic, its operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such

information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

19.     The Individual Defendants are liable as direct participants in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Tempur-Pedic's business.

20.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public.  The Individual Defendants were provided with copies of the Company's reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

21.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and were traded on NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Tempur-Pedic's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Tempur-Pedic's securities would be based on truthful and accurate

information.   The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

22.     The Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Tempur-Pedic's publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.     Background of Tempur-Pedic

23.     Tempur-Pedic engages in the manufacture, marketing, and distribution of bedding products in North America and internationally.   The Company offers mattresses, pillows, and adjustable bed bases, as well as various cushions and other comfort products. The company sells its products under the TEMPUR and Tempur-Pedic brand names through furniture and bedding retailers, and non-spring and department stores; direct response program, Internet, and company-owned stores; hospitals, nursing homes, healthcare professionals, and medical retailers; and third party distributors. Tempur-Pedic International Inc. was founded in 1989 and is headquartered in Lexington, Kentucky.

### B.     False and Misleading Statements

24.     The Class Period begins on January 25, 2012.   One day prior on January 24, 2012, after the close of the markets, Tempur-Pedic issued a press release announcing its financial and operating results for the fourth quarter and full year ended December 31, 2011.   The press release stated in pertinent part as follows:

> **Tempur-Pedic Reports Record Fourth Quarter and Full Year Sales and Earnings**
>
> **-- Reports Fourth Quarter Sales Up 25% and EPS Up 27% at $0.84**
> **-- Announces New $250 Million Share Repurchase Program**
> **-- Issues Financial Guidance For 2012**

LEXINGTON, Ky., Jan. 24, 2012 /PRNewswire/ -- Tempur-Pedic International Inc. (NYSE: TPX), the leading manufacturer, marketer and distributor of premium mattresses and pillows worldwide, today announced financial results for the fourth quarter and year ended December 31, 2011. The Company also announced a $250 million share repurchase program and issued financial guidance for 2012.

## FOURTH QUARTER FINANCIAL SUMMARY

- Earnings per diluted share (EPS) were $0.84 in the fourth quarter of 2011 as compared to EPS of $0.66 per diluted share in the fourth quarter of 2010. The Company reported net income of $56.3 million for the fourth quarter of 2011 as compared to net income of $46.3 million in the fourth quarter of 2010.

- Net sales increased 25% to $366.8 million in the fourth quarter of 2011 from $292.7 million in the fourth quarter of 2010. On a constant currency basis, net sales increased 24%. Net sales in the North American segment increased 26% and international segment net sales increased 25%. On a constant currency basis, international segment net sales increased 21%.

- Mattress sales increased 26% globally. Mattress sales increased 24% in the North American segment and increased 33% in the international segment. On a constant currency basis, international mattress sales increased 29%. Pillow sales increased 16% globally. Pillow sales increased 15% in North America and 17% internationally. On a constant currency basis, international pillow sales increased 13%.

- Gross profit margin was 52.1% as compared to 51.9% in the fourth quarter of 2010. The gross profit margin increased as a result of favorable mix, improved efficiencies in manufacturing and distribution, and fixed cost leverage related to higher production volumes, partially offset by higher commodity costs and costs associated with US shipments to support the Company's Danish manufacturing facility.

- Operating profit margin was 23.4% as compared to 24.5% in the fourth quarter of 2010 reflecting the Company's strategic investments to drive growth, including brand advertising.

- The Company generated $69.7 million of operating cash flow as compared to $44.5 million in the fourth quarter of 2010.

- During the fourth quarter of 2011, the Company purchased 2.3 million shares of its common stock for a total cost of $128.5 million.

## FULL YEAR FINANCIAL SUMMARY

- Earnings per share (EPS) were $3.18 per diluted share for the full year 2011 as compared to EPS of $2.16 per diluted share for the full year 2010. The Company

reported net income of $219.6 million for the full year 2011 as compared to net income of $157.1 million for the full year 2010.

- Net sales increased 28% to $1,417.9 million for the full year 2011 from $1,105.4 million for the full year 2010. On a constant currency basis, net sales increased 25%. Net sales in the North American segment increased 30% and international segment net sales increased 24%. On a constant currency basis, international segment net sales increased 16%.

- Gross profit margin was 52.4% for the full year 2011 as compared to 50.2% for the full year 2010. The gross profit margin increased as a result of favorable mix, improved efficiencies in manufacturing and distribution, and fixed cost leverage related to higher production volumes, partially offset by higher commodity costs, new product introductions, and costs associated with US shipments to support the Company's Danish manufacturing facility.

- Operating profit margin was 24.0% as compared to 22.2% for the full year 2010.

- The Company generated $248.7 million of operating cash flow as compared to $184.1 million for the full year 2010.

- During 2011, the Company purchased 6.5 million shares of its common stock for a total cost of $368.5 million.

Chief Executive Officer Mark Sarvary commented, "In 2011, we delivered strong financial performance, strengthened our competitiveness and implemented a range of strategic growth initiatives. Over the next year, we plan to increase our rate of investment in areas that will drive growth including a major new product launch, increased advertising, and expanded distribution. In addition, to ensure Tempur continues to deliver the best sleep, our R&D team is focused on executing a broad technology strategy that includes a focus on improving existing product performance and lowering costs as well as another major new product launch in 2013."

**Share Repurchase Program**

The Company announced the Board of Directors has authorized a new share repurchase program of up to $250.0 million. This share repurchase program replaces the Company's prior share repurchase authorization, and may be limited, suspended or terminated at any time without prior notice. Stock repurchases under this program may be made through open market transactions, negotiated purchases or otherwise, at times and in such amounts as management and a committee of the Board deem appropriate. The timing and actual number of shares repurchased will depend on a variety of factors including price, financing and regulatory requirements and other market conditions. Repurchases may also be made under a Rule 10b5-1 plan, which would permit shares to be repurchased when the Company might otherwise be precluded from doing so under insider trading laws.

**Financial Guidance**

The Company issued full year 2012 guidance for net sales and earnings per share. It currently expects net sales for 2012 to range from $1.60 billion to $1.65 billion. It currently expects EPS for 2012 to range from $3.80 to $3.95 per diluted share. The Company noted its expectations are based on information available at the time of this release, and are subject to changing conditions, many of which are outside the Company's control. The Company noted its EPS guidance does not assume any benefit from a potential reduction in shares outstanding related to its share repurchase program.

25.    On January 30, 2012, the Company filed its annual report with the SEC on Form

10-K for the fiscal year ended December 31, 2011.   The Company's 10-K was signed by

Defendants Sarvary and Williams and reaffirmed the Company's financial results previously

announced on January 24, 2012.   The Company's Form 10-K also contained Sarbanes-Oxley

("SOX") certifications signed by Defendants Sarvary and Williams, who certified:

1. I have reviewed this annual report on Form 10-K of Tempur-Pedic International Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and

the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting;

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

26.     Defendants Sarvary and Williams also certified the following on the Company's

Form 10-K:

Each of the undersigned hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, in his capacity as an officer of Tempur-Pedic International Inc. (the "Company"), that, to his knowledge, the Annual Report of the Company on Form 10-K for the period ended December 31, 2011, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m or 78o(d)) and that the information contained in such report fairly presents, in all material respects, the financial condition and results of operations of the Company. This written statement is being furnished to the Securities and Exchange Commission as an exhibit to such Form 10-K. A signed original of this statement has been provided to the Company and will be retained by the Company and furnished to the Securities and Exchange Commission or its staff upon request.

27.     On April 19, 2012, Tempur-Pedic issued a press release announcing its financial

and operating results for the first quarter of 2012 ending March 31, 2012. In the press release,

the Company confirmed financial guidance for 2012. The press release stated in pertinent part as

follows:

Tempur-Pedic Reports Record First Quarter Sales And Earnings

- Reports First Quarter Sales Up 18% and EPS Up 26% at $0.86

LEXINGTON, Ky., April 19, 2012 /PRNewswire/ -- Tempur-Pedic International Inc. (NYSE: TPX), the leading manufacturer, marketer and distributor of premium mattresses and pillows worldwide, today announced financial results for the first quarter ended March 31, 2012. The Company also confirmed financial guidance for 2012.

FIRST QUARTER FINANCIAL SUMMARY

Earnings per diluted share (EPS) were $0.86 in the first quarter of 2012 as compared to EPS of $0.68 per diluted share in the first quarter of 2011. The Company reported net income of $56.2 million for the first quarter of 2012 as compared to net income of $48.3 million in the first quarter of 2011. First quarter net income had a net benefit of $2 million from the resolution of foreign tax matters.

Net sales increased 18% to $384.4 million in the first quarter of 2012 from $325.8 million in the first quarter of 2011. On a constant currency basis, net sales increased 19%. Net sales in the North American segment increased 17% and international segment net sales increased 19%. On a constant currency basis, international segment net sales increased 22%.

Mattress sales increased 18% globally. Mattress sales increased 15% in the North American segment and increased 26% in the international segment. On a constant currency basis, international mattress sales increased 29%. Pillow sales increased 20% globally. Pillow sales increased 22% in North America and 17% internationally. On a constant currency basis, international pillow sales increased 19%.

Gross profit margin was 53.6% as compared to 52.3% in the first quarter of 2011. The gross profit margin increased as a result of improved efficiencies in manufacturing and distribution and fixed cost leverage related to higher production volumes, partially offset by higher new product costs.

Operating profit margin was 22.4% as compared to 23.1% in the first quarter of 2011 reflecting the Company's strategic investments to drive growth, including brand advertising.

The Company generated $44.6 million of operating cash flow as compared to $55.7 million in the first quarter of 2011.

During the first quarter of 2012, the Company purchased 0.2 million shares of its common stock for a total cost of $12 million. As of March 31, 2012, the Company had $238 million available under its existing share repurchase authorization.

Chief Executive Officer Mark Sarvary commented, "In the first quarter we delivered solid financial performance, enhanced our product range with the

introduction of TEMPUR-Simplicity and increased our investment in advertising by 37% to $47 million. We are excited about the rollout of our new dealer programs beginning in the second quarter."

Financial Guidance

The Company confirmed its full year 2012 guidance for net sales and earnings per share. It expects net sales for 2012 to range from $1.60 billion to $1.65 billion. It expects EPS for 2012 to range from $3.80 to $3.95 per diluted share. The Company noted its expectations are based on information available at the time of this release, and are subject to changing conditions, many of which are outside the Company's control. The Company noted its EPS guidance does not assume any benefit from a potential further reduction in shares outstanding related to its share repurchase program.

28.     On April 26, 2012, the Company filed its Form 10-Q for the first quarter of 2012,

which was signed by Defendant Williams and contained SOX certifications signed by

Defendants Sarvary and Williams.  The Form 10-Q reaffirmed the financial results presented in

the Company's April 19, 2012 press release.

## C.     **The Truth Comes to Light**

29.     On June 6, 2012, prior to the opening of the markets, Tempur-Pedic issued a press

release entitled, "Tempur-Pedic Updates Full Year Guidance And Comments On Second Quarter

2012."  The press release provided in pertinent part as follows:

Tempur-Pedic Updates Full Year Guidance And Comments On Second Quarter 2012

LEXINGTON, Ky., June 6, 2012 /PRNewswire/ -- Tempur-Pedic International Inc. (NYSE: TPX), the leading manufacturer, marketer and distributor of premium mattresses and pillows worldwide, today commented on second quarter performance and updated its financial guidance for 2012.

The Company noted that second quarter sales to date in North America have been below the Company's plan. Although the Company does not ordinarily provide quarterly guidance, the Company is providing an outlook for the second quarter. The Company currently expects net sales for the second quarter ending June 30, 2012 to be 3-5% below last year's second quarter net sales, driven by the expectation that the Company's North American sales will decline approximately 8% year-over-year. With lower than planned sales and associated deleverage, the Company currently expects second quarter 2012 diluted earnings per share to decrease approximately 50% from the second quarter of 2011.

Based on the second quarter outlook and an updated full year review, the Company currently expects full year net sales to be approximately $1.43 billion. In addition, the Company is updating its full year earnings guidance and currently expects diluted earnings per share to be approximately $2.70.

Chief Financial Officer Dale Williams commented, "In light of the current environment for North American sales, our guidance assumes that North American sales for the third and fourth quarters will each be approximately equal to the second quarter sales factoring in modest seasonality. Our international business continues to perform well and we have made no substantive changes to our expectations for international sales."

The Company notes that its expectations for the second quarter of 2012 and the full year are based on information available at the time of this release and the assumptions described above, and are subject to changing conditions, many of which are outside the Company's control.

Chief Executive Officer Mark Sarvary commented, "Sales trends in our North America business during the second quarter have been disappointing and below plan, primarily due to changes in the competitive environment, including an unprecedented number of new competitive product introductions which have been supported by aggressive marketing and promotion. As a result, we are projecting lower sales than previously anticipated for the rest of the year and are taking actions to realign our expense structure appropriately. However, we remain very confident in our Company's growth potential and our strong brand, and as a result remain committed to our long-term strategic plan."

30.     After the Company's announcement, Tempur-Pedic's stock price plunged $21.28 from its prior trading day close of $43.67 to close on June 6, 2012 at $22.39—a massive one-day decline of over 48% on unusually heavy trading volume.

31.     As a result of Defendants' materially false and misleading statements and omissions during the Class Period, Plaintiff and the Class have suffered millions of dollars in damages.

**D.     Reasons For Falsity**

32.     Tempur-Pedic's statements and filings during the Class Period were materially false and misleading, and omitted material adverse information concerning the Company's business, operations and prospects.

33. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that the Company's profit and revenue forecasts issued in January 2012 were lacking in any reasonable basis; (ii) that, at the time the Company issued its profit and revenue forecast in January 2012, the Company's insiders knew that the competitive landscape in its industry was more difficult than described and would thus make the Company's guidance impossible to achieve; (iii) that certain insiders of the Company capitalized on this material adverse information to sell the Company's shares at inflated prices before the truth concerning Tempur-Pedic's sales information was disclosed to the market; (iv) that the Company lacked adequate internal and financial controls; and (v) that, as a result of the above, the Company's statements concerning its business and operational prospects were materially false and misleading at all relevant times.

**E.** **Improper Insider Sales During the Class Period**

34. The Individual Defendants caused or allowed Tempur-Pedic to issue false and misleading press releases, financial reports and direct statements during the Class Period, and failed to disclose material, nonpublic information necessary to make such statements not false and misleading. As a result of these false and misleading statements and omissions, the price of the Company's stock was artificially inflated.

35. The Individual Defendants were motivated to engage in the wrongdoing herein, resulting in the artificial inflation of the Company's stock, in order to allow certain Company insiders, including the Individual Defendants, to profit from their sales of Tempur-Pedic common stock during the Class Period.

36. As detailed above, the Individual Defendants, as officers and directors of the Company, were privy to confidential financial information concerning the Company's business, financial condition, future business prospects and outlook. In this capacity, the Individual

Defendants had access to material, nonpublic information concerning Tempur-Pedic's true financial condition.

37.     Notwithstanding the duty not to sell Tempur-Pedic common stock under these circumstances, or the duty to disclose the material, nonpublic information prior to selling the stock, these insiders sold Tempur-Pedic stock at prices that were artificially inflated by the Individual Defendants' materially false and misleading statements and omissions.

38.     Specifically, these insiders, while in possession of material, nonpublic information regarding the Company's true business prospects, improperly sold their Tempur-Pedic stock at artificially inflated prices and personally profited from their insider knowledge. These individuals improperly sold over 265,000 shares of Tempur-Pedic stock during the Class Period for total proceeds of more than $20 million:

| Date | Insider | Shares | Transaction | Value |
|---|---|---|---|---|
| 02/28/12 | Sarvary, Mark A. | 20,000 | Automatic Sale at $77.59 per share. | 1,551,800 |
| 02/28/12 | Clift, Matthew | 52,500 | Automatic Sale at $77.61 - $78.08 per share. | 4,087,000 |
| 03/01/12 | Anderson, Richard W. | 20,000 | Automatic Sale at $80 per share. | 1,600,000 |
| 03/01/12 | Williams, Dale | 65,000 | Automatic Sale at $80 per share. | 5,200,000 |
| 03/09/12 | Montgomery, David | 33,333 | Automatic Sale at $82.11 per share. | 2,736,972 |
| 02/09/12 | Trussell, Robert B. | 9,000 | Sale at $70.41 per share. | 633,690 |
| 02/13/12 | Jones, Lou H. | 2,500 | Sale at $73 per share. | 182,500 |
| 02/15/12 | Anderson, Richard W. | 15,000 | Sale at $75 per share. | 1,125,000 |
| 02/15/12 | Montgomery, David | 33,334 | Sale at $75.12 per share. | 2,504,050 |
| 02/23/12 | Anderson, Richard W. | 15,000 | Sale at $77.50 per share. | 1,162,500 |
| Total Insider Sales | | 265,667 | | 20,783,512 |

## V.     UNDISCLOSED ADVERSE INFORMATION

39.     The market for Tempur-Pedic's securities was an open, well-developed and efficient market at all relevant times.   As a result of the materially false and misleading statements and failures to disclose described herein, Tempur-Pedic's securities traded at artificially inflated prices during the Class Period.   Plaintiff and the other members of the Class purchased or otherwise acquired Tempur-Pedic's securities relying upon the integrity of the

market price of Tempur-Pedic's securities and market information related to Tempur-Pedic and have been damaged thereby.

40.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Tempur-Pedic's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Such statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business and financial operations, as alleged herein.

41.    At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Tempur-Pedic's operational and financial condition.

42.    These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Tempur-Pedic and its financial condition, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times. Defendants' false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VI.    SCIENTER ALLEGATIONS

43.    As alleged herein, the Individual Defendants acted with scienter in that Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly

16

and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

44.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Tempur-Pedic, their control over, receipt and/or modification of Tempur-Pedic's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Tempur-Pedic, participated in the fraudulent scheme alleged herein.

45.     The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## VII.   STATUTORY SAFE HARBOR

46.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded herein. Furthermore, many of the statements pleaded herein were not identified as "forward-looking statements" when made, or indicated that actual results "could differ materially from those projected." Nor were there any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein.

47.     Defendants are liable for the statements pleaded because, at the time each of those statements was made, Defendants knew the statement was false and the statement was authorized and/or approved by an executive officer of Tempur-Pedic who knew that such statement was false when made.

## VIII.  LOSS CAUSATION

48.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Tempur-Pedic's securities and operated as a fraud or deceit on Class Period purchasers of Tempur-Pedic's

securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information. When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Tempur-Pedic's securities fell precipitously as the prior inflation came out of the Company's stock price. As a result of their purchases of Tempur-Pedic's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

49.     By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status. Therefore, Defendants presented a misleading picture of Tempur-Pedic's business practices and procedures. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Tempur-Pedic to conceal the truth.

50.     Defendants' false and misleading statements had the intended effect and caused Tempur-Pedic's common stock to trade at artificially inflated levels throughout the Class Period. The stock price drops discussed herein caused real economic loss to investors who purchased the Company's securities during the Class Period.

51.     The decline in the price of Tempur-Pedic's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Tempur-Pedic's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Tempur-Pedic's securities and the subsequent decline in the value of Tempur-Pedic's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

52.    At all relevant times, the market for Tempur-Pedic stock was an efficient market for the following reasons, among others:

a.    Tempur-Pedic securities met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient market;

b.    As a regulated issuer, Tempur-Pedic filed periodic public reports with the SEC and NASDAQ;

c.    Tempur-Pedic securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d.    Tempur-Pedic regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

53.    As a result, the market for Tempur-Pedic securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Tempur-Pedic's stock price. Under these circumstances, all purchasers of Tempur-Pedic common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## X.   CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Tempur-Pedic securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, members of the immediate family of each of the

Individual Defendants, any subsidiary or affiliate of Tempur-Pedic and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

55.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Throughout the Class Period, Tempur-Pedic securities were actively traded on NASDAQ (an open and efficient market) under the symbol "TPX."  As of April 25, 2012, the Company had approximately 64 million shares outstanding.  Record owners and other members of the Class may be identified from records maintained by Tempur-Pedic and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        a.     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.   whether Defendants participated in and pursued the common course of conduct complained of herein;

c.   whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Tempur-Pedic;

d.   whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Tempur-Pedic;

e.   whether the market price of Tempur-Pedic common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.   the extent to which the members of the Class have sustained damages and the proper measure of damages.

59.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## XI.   COUNTS AGAINST DEFENDANTS UNDER THE EXCHANGE ACT

### COUNT I
### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Defendants

60.   Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.  This claim is asserted against Defendants.

21

61.     During the Class Period, Tempur-Pedic and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tempur-Pedic common stock; and (iii) cause Plaintiff and other members of the Class to purchase Tempur-Pedic stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

62.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Tempur-Pedic securities in violation of §10(b) of the Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Tempur-Pedic, as alleged herein.

63.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

64.     Tempur-Pedic and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Tempur-Pedic as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tempur-Pedic's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Tempur-Pedic and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Tempur-Pedic's securities during the Class Period.

65.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the

23

Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

66.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Tempur-Pedic's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock.   As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

67.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tempur-Pedic securities was artificially inflated during the Class Period.   In ignorance of the fact that the market price of Tempur-Pedic shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tempur-Pedic securities during the Class Period at artificially inflated high prices and were damaged thereby.

68.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Tempur-Pedic, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Tempur-Pedic securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

69.     By virtue of the foregoing, Tempur-Pedic and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### COUNT II
### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.  This claim is asserted against the Individual Defendants.

72.     The Individual Defendants were and acted as controlling persons of Tempur-Pedic within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press

25

releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

74.     As set forth above, Tempur-Pedic and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a)     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other relief as this Court deems appropriate.

## XIII.   JURY DEMAND

Plaintiff demands a trial by jury in the Central jury division.

Dated:  June 21, 2012

By: _____

**STRAUSE LAW GROUP, PLLC**
Randall S. Strause
804 Stone Creek Pkwy., Suite One
Louisville, KY 40223
Tel: (502) 426-1661
Fax: (502) 426-6772

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Christopher S. Jones
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

**RYAN & MANISKAS, LLP**
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Rd., Suite 311
Wayne, PA 19087
Tel:  (484) 588-5516
Fax:  (484) 450-2582

*Attorneys for Plaintiff*